## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. <u>15-20197-Cr-Martinez/Goodman(s)(s)</u>

18 U.S.C. §1349
18 U.S.C. §1341
18 U.S.C. §1343
18 U.S.C. §1346
18 U.S.C. §2
18 U.S.C. §981(a)(1)(C)

FILED BY _____ *TB*

*Deputy Clerk*

*Sep 17, 2015*

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. Miami Florida

UNITED STATES OF AMERICA,

vs.

RAFAEL DURAN and
FATIMA RUIZ,
a/k/a Fatima Cabana,
                    Defendants.
_____/

## SECOND SUPERSEDING INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At times relevant to this Second Superseding Indictment:

1.      Defendant Rafael Duran was employed as a police officer with the Miami-Dade Police Department.

2.      Co-conspirator George Price was employed as a police officer with the Miami-Dade Police Department.

3.      Equifax, TransUnion, and Experian were credit reporting agencies which collected and maintained data relevant to the credit worthiness of individual consumers. Equifax, TransUnion, and Experian (hereinafter, "the credit reporting agencies") would use such

data in order to generate numerical credit scores for consumers that attempted to measure their credit worthiness.   Information that the credit reporting agencies would take into account in computing a consumer's credit score included the consumer's bill paying history and the consumer's borrowing and repayment history.   According to the scoring system used by the credit reporting agencies, consumers with higher credit scores were deemed to be more favorable credit risks than consumers with lower credit scores.

4.     Businesses would rely on the credit scores generated by the credit reporting agencies in determining whether to extend credit to a prospective borrower and, if so, the terms under which credit would be extended.

### COUNT 1
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. §1349)

Paragraphs 1 through 4 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated as though fully set forth herein.

From sometime in or around early 2010, the exact time being unknown to the Grand Jury, and continuing through on or about October 17, 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**RAFAEL DURAN and
FATIMA RUIZ,
a/k/a Fatima Cabana,**

did willfully, that is, with intent to further a purpose of the conspiracy, and knowingly combine, conspire, confederate, and agree with other persons known to the Grand Jury to devise a scheme and artifice:

-2-

a.       to defraud and deprive another of the intangible right of honest services, through bribery and kickbacks, and

b.       to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and

for the purpose of executing such scheme, to transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Sections 1343 and 1346.

## PURPOSES OF THE CONSPIRACY

The purposes of the conspiracy included, but were not limited to, the following:

1.       It was a purpose of the conspiracy for **RAFAEL DURAN** to secretly use his official position as a police officer with the Miami-Dade Police Department to enrich himself by accepting payments and other things of value from members of the conspiracy operating credit repair businesses and a related business (hereinafter, "the credit businesses"), in exchange for favorable official action.

2.       It was further a purpose of the conspiracy for co-conspirator George Price to secretly use his official position as a police officer with the Miami-Dade Police Department to enrich himself by accepting payments from members of the conspiracy, in exchange for favorable official action.

3.       It was further a purpose of the conspiracy for the members of the conspiracy to enrich themselves by transmitting false information to the credit reporting agencies in order to

induce the agencies to remove negative items from the credit histories of customers of the credit businesses and thereby promote the success of the credit businesses.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means of the conspiracy included, but were not limited to, the following:

1.      A member of the conspiracy associated with the credit businesses would provide **RAFAEL DURAN** with identifying information of customers of the credit businesses.

2.      **RAFAEL DURAN** would provide favorable official action by creating police reports relating to the customers of the credit businesses whose identifying information had been provided to him.   These police reports would falsely represent that, on the dates and at the times set forth in the respective reports, the customers had reported to the Miami-Dade Police Department facts consistent with the customers having been victims of identity theft.   In particular, many of the police reports which **DURAN** created would falsely represent that the alleged "victims," in making their alleged reports, stated that upon checking or reviewing their "credit" or "credit report," they had "realized" that "several" of their "accounts" had been "compromised."

3.      **RAFAEL DURAN** would cause many of the false police reports he created relating to the customers of the credit businesses to be entered into the official records of the Miami-Dade Police Department.

4.      **RAFAEL DURAN** would cause the false police reports he created relating to the customers of the credit businesses to be delivered to a member of the conspiracy associated with the credit businesses.

5.      Members of the conspiracy associated with the credit businesses would cause the false police reports created by **RAFAEL DURAN** relating to the customers of the credit businesses to be transmitted to the credit reporting agencies in order to induce the agencies to remove negative items from the credit histories of the alleged victims identified in the false police reports.

6.      In return for the false police reports relating to the customers of the credit businesses, **RAFAEL DURAN** would accept payment and other things of value from members of the conspiracy associated with the credit businesses.   The other things of value would include credit repair services for both himself and a personal associate.

7.      **RAFAEL DURAN** also would create police reports relating to himself and a personal associate.   Although **DURAN** would create these police reports himself, in the reports **DURAN** would falsely identify another police officer as the officer who allegedly wrote the reports.   In these police reports, **DURAN** would falsely represent that, on the date and at the time set forth in the respective reports, **DURAN** and his personal associate had reported to the officer who allegedly wrote the reports that, upon "reviewing" their respective credit reports, **DURAN** and his personal associate each had "realized" that their "identity had been compromised on several accounts."

8.      **RAFAEL DURAN** would cause the false police reports relating to **DURAN** and his personal associate to be delivered to a member of the conspiracy associated with the credit businesses.

9.      A member of the conspiracy associated with the credit businesses would cause the false police reports relating to **RAFAEL DURAN** and his personal associate to be transmitted by

wire to the credit reporting agencies in order to induce the agencies to remove negative items from the credit histories of **DURAN** and his personal associate.

10.     Members of the conspiracy associated with the credit businesses would cause identifying information of customers of the credit businesses to be provided to co-conspirator George Price, as well as other information to be included in police reports.

11.     George Price would create police reports relating to the customers of the credit businesses whose identifying information had been provided to him.   These police reports would falsely represent that, on the dates and at the times set forth in the respective reports, the customers had reported to the Miami-Dade Police Department facts consistent with the customers having been victims of identity theft.   In particular, many of the police reports which Price created would falsely represent that the alleged "victims," in making their alleged reports, stated that "several" of their "accounts" had been "compromised" or "opened fraudulently."   Many of the reports also would falsely represent that the alleged "victims" stated that unknown "subject(s) attempted and or conducted unauthorized transactions to the accounts."

12.     George Price would cause many of the false police reports he created relating to the customers of the credit businesses to be entered into the official records of the Miami-Dade Police Department.

13.     George Price would cause the false police reports he created relating to the customers of the credit businesses to be delivered to a member of the conspiracy associated with the credit businesses.

14.     Members of the conspiracy associated with the credit businesses would cause the false police reports created by George Price relating to the customers of the credit businesses to be

-6-

transmitted to the credit reporting agencies in order to induce the agencies to remove negative items from the credit histories of the alleged victims identified in the false police reports.

15.     In return for the false police reports relating to the customers of the credit businesses, George Price would accept payment from members of the conspiracy associated with the credit businesses.  These payments would be delivered to Price by co-conspirator Mitchell Page.  Page was an associate of Price and acted as an intermediary between Price and the members of the conspiracy associated with the credit businesses.  Co-conspirator Mitchell Page would receive the funds he would deliver to George Price from members of the conspiracy including **FATIMA RUIZ, a/k/a Fatima Cabana**.

16.     **FATIMA RUIZ, a/k/a Fatima Cabana**, worked at the credit businesses.  Her role in the conspiracy included providing funds to co-conspirator Mitchell Page, a portion of which Page would deliver to George Price as payment for Price's participation in the conspiracy.

17.     As part of her role in the conspiracy, **FATIMA RUIZ, a/k/a Fatima Cabana**, also would transmit to the credit reporting agencies letters claiming that customers of the credit businesses had been victims of identity theft.  **RUIZ** would include false police reports to support the claims made in these letters.

18.     **FATIMA RUIZ, a/k/a Fatima Cabana**, additionally would cause other forms of false information to be transmitted to the credit reporting agencies.  For instance, **RUIZ** would fabricate documents which would falsify the home addresses of certain customers of the credit businesses.  The false address information was used in an attempt to convince the credit reporting agencies that negative items associated with the customers should be removed, because

the customers had not resided at the addresses associated with the negative items, but rather resided at the false home addresses fabricated by **RUIZ**.

19.     **FATIMA RUIZ, a/k/a Fatima Cabana**, also solicited and received from **RAFAEL DURAN** a police report created by **DURAN** which falsely claimed that **RUIZ** was a victim of identity theft.   **RUIZ** caused the false police report to be transmitted to one or more of the credit reporting agencies in order to induce the agencies to remove negative items from her credit history.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2 – 10
### Wire Fraud
### (18 U.S.C. §§1343, 1346, and 2)

Paragraphs 1 through 4 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated as though fully set forth herein.

From sometime in or around early 2010, the exact time being unknown to the Grand Jury, and continuing through on or about October 17, 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**RAFAEL DURAN and**
**FATIMA RUIZ,**
**a/k/a Fatima Cabana,**

and others known to the Grand Jury, did knowingly and with intent to defraud devise and intend to devise a scheme and artifice:

a.      to defraud and deprive another of the intangible right of honest services, through bribery and kickbacks, and

-8-

b.       to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

## THE SCHEME AND ARTIFICE

Paragraphs 1 through 19 of the Manner and Means of the Conspiracy section of Count 1 of this Second Superseding Indictment are re-alleged and incorporated by reference as a description of the scheme and artifice.

## EXECUTION OF THE SCHEME AND ARTIFICE

On or about the dates listed as to each count below, the defendants identified below by count, for the purpose of executing the above-described scheme and artifice, did cause to be transmitted, by means of wire communications in interstate commerce, certain writings, signs, signals, pictures, and sounds, as set forth below by count:

| Count | Date | Defendant(s) | Communication |
|-------|------|--------------|---------------|
| 2 | April 6, 2010 | **RAFAEL DURAN** | Facsimile to TransUnion representing that "M.G." was a victim of identity theft |
| 3 | April 6, 2010 | **RAFAEL DURAN** | Facsimile to TransUnion representing that "S.A." was a victim of identity theft |
| 4 | April 6, 2010 | **RAFAEL DURAN** | Facsimile to Experian representing that "G.C." was a victim of identity theft |
| 5 | April 6, 2010 | **RAFAEL DURAN** | Facsimile to Equifax representing that "G.C." was a victim of identity theft |
| 6 | April 9, 2010 | **RAFAEL DURAN** | Facsimile to TransUnion representing that "G.C." was a victim of identity theft |
| 7 | April 20, 2010 | **RAFAEL DURAN** | Facsimile to TransUnion representing that "M.G." was a victim of identity theft |

| Count | Date | Defendant(s) | Communication |
|-------|------|--------------|---------------|
| 8 | June 30, 2010 | **RAFAEL DURAN** | Facsimile to Equifax representing that "M.S." was a victim of identity theft |
| 9 | August 4, 2010 | **RAFAEL DURAN** | Facsimile to Equifax representing that "A.D." was a victim of identity theft |
| 10 | October 1, 2010 | **RAFAEL DURAN and FATIMA RUIZ, a/k/a Fatima Cabana** | Facsimile to Equifax representing that defendant, **RAFAEL DURAN**, was a victim of identity theft |

In violation of Title 18, United States Code, Sections 1343, 1346, and 2.

## COUNT 11
### Conspiracy to Commit Mail Fraud
### (18 U.S.C. §1349)

Paragraphs 1 through 4 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated as though fully set forth herein.

From sometime in or around October 2010 and continuing through in or around early December 2012, the exact times being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### FATIMA RUIZ,
### a/k/a Fatima Cabana,

did willfully, that is, with intent to further a purpose of the conspiracy, and knowingly combine, conspire, confederate, and agree with one or more persons known to the Grand Jury, to devise a scheme and artifice:

      a.      to defraud and deprive another of the intangible right of honest services, through bribery and kickbacks, and

-10-

      b.      to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and

for the purpose of executing such scheme, to place in any post office or authorized depository for mail matter, matters and things, to be sent or delivered by the Postal Service, in violation of Title 18, United States Code, Sections 1341 and 1346.

## PURPOSE OF THE CONSPIRACY

1.      It was a purpose of the conspiracy for co-conspirator George Price to secretly use his official position as a police officer with the Miami-Dade Police Department to enrich himself by accepting payments from **FATIMA RUIZ, a/k/a Fatima Cabana**, in exchange for favorable official action.

2.      It was further a purpose of the conspiracy for **FATIMA RUIZ, a/k/a Fatima Cabana**, to enrich herself by transmitting false information to the credit reporting agencies in order to induce the agencies to remove negative items from the credit histories of customers of a credit repair business which **RUIZ** operated and controlled, and thereby promote the success of her credit repair business

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means of the conspiracy included, but were not limited to, the following:

1.      **FATIMA RUIZ, a/k/a Fatima Cabana,** would operate and control a credit repair business.  This credit repair business was separate and apart from the credit businesses referenced in Counts 1 through 10 of this Second Superseding Indictment.

2.      **FATIMA RUIZ, a/k/a Fatima Cabana,** would recruit customers for her credit repair business.   In return for the services which she offered, **RUIZ** would solicit and receive payment from her customers.

3.      In order to induce the credit reporting agencies to remove negative items from the credit histories of her customers, **FATIMA RUIZ, a/k/a Fatima Cabana,** would send letters to the agencies claiming that her customers had been victims of identity theft.

4.      To support the claim in these letters that her customers had been victims of identity theft, **FATIMA RUIZ, a/k/a Fatima Cabana,** would include police reports representing that the customers had been victims of identity theft.

5.      The police reports referenced in the previous paragraph would be created by co-conspirator George Price.   These police reports would falsely represent that, on the dates and at the times set forth in the respective reports, the customers had reported to the Miami-Dade Police Department facts consistent with the customers having been victims of identity theft.   In particular, many of the police reports which Price created would falsely represent that the alleged "victims," in making their alleged reports, stated that "several" of their "accounts" had been "compromised" or "opened fraudulently."   Many of the reports also would falsely represent that the alleged "victims" stated that unknown "subject(s) attempted and or conducted unauthorized transactions to the accounts."

6.      George Price would cause false police reports he created relating to the customers of the credit repair business of **FATIMA RUIZ, a/k/a Fatima Cabana,** to be entered into the official records of the Miami-Dade Police Department.

-12-

7.     In return for the police reports created by George Price, **FATIMA RUIZ, a/k/a Fatima Cabana,** would provide funds to co-conspirator Mitchell Page, a portion of which Page would deliver to George Price as payment for Price's participation in the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 12 – 14**
**Mail Fraud**
**(18 U.S.C. §§1341, 1346, and 2)**

Paragraphs 1 through 4 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated as though fully set forth herein.

From sometime in or around October 2010, and continuing through in or around early December 2012, the exact times being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**FATIMA RUIZ,**
**a/k/a Fatima Cabana,**

and others known to the Grand Jury, did knowingly and with intent to defraud devise and intend to devise a scheme and artifice:

a.     to defraud and deprive another of the intangible right of honest services, through bribery and kickbacks, and

b.     to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

-13-

## THE SCHEME AND ARTIFICE

Paragraphs 1 through 7 of the Manner and Means of the Conspiracy section of Count 11 of this Second Superseding Indictment are re-alleged and incorporated by reference as a description of the scheme and artifice.

## EXECUTION OF THE SCHEME AND ARTIFICE

On or about the approximate dates listed as to each count below, the defendant, **FATIMA RUIZ, a/k/a Fatima Cabana,** for the purpose of executing the above-described scheme and artifice, did cause to be placed in any post office or authorized depository for mail matter, to be sent or delivered by the Postal Service, certain matters and things, as set forth below by count:

| Count | Date | Mailing |
|-------|------|---------|
| 12 | October 3, 2011 | Letter to TransUnion representing that "J.T." was a victim of identity theft |
| 13 | December 9, 2011 | Letter to TransUnion representing that "A.T." was a victim of identity theft |
| 14 | Late May 2012 | Letter to TransUnion representing that "S.C." was a victim of identity theft |

In violation of Title 18, United States Code, Sections 1341, 1346, and 2.

## COUNTS 15 – 18
### Mail Fraud
### (18 U.S.C. §§1341 and 2)

Paragraphs 1, 3, and 4 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated as though fully set forth herein.

-14-

From on or about June 21, 2010, and continuing through in or around July 2013, the exact time being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**FATIMA RUIZ,**
**a/k/a Fatima Cabana,**

did knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

## THE SCHEME AND ARTIFICE

1.      It was a part of the scheme and artifice to defraud for **FATIMA RUIZ, a/k/a Fatima Cabana,** to send to the credit reporting agencies letters claiming that she had been a victim of identity theft.

2.      It was a further part of the scheme and artifice to defraud for **FATIMA RUIZ, a/k/a Fatima Cabana,** to support her claim in these letters that she had been a victim of identity theft by including false or counterfeit police reports representing that **RUIZ** was the victim of identity theft, including the false police report created by Rafael Duran referenced in paragraph 19 of the Manner and Means of the Conspiracy section of Count 1 of this Second Superseding Indictment.

## EXECUTION OF THE SCHEME AND ARTIFICE

On or about the approximate dates listed as to each count below, the defendant, **FATIMA RUIZ, a/k/a Fatima Cabana,** for the purpose of executing the above-described scheme and

artifice, did cause to be placed in any post office or authorized depository for mail matter, to be sent or delivered by the Postal Service, certain matters and things, as set forth below by count:

| Count | Date | Mailing |
|-------|------|---------|
| 15 | September 29, 2011 | Letter to TransUnion representing that **FATIMA RUIZ, a/k/a Fatima Cabana,** was a victim of identity theft |
| 16 | March 31, 2012 | Letter to TransUnion representing that **FATIMA RUIZ, a/k/a Fatima Cabana,** was a victim of identity theft |
| 17 | August 31, 2012 | Letter to TransUnion representing that **FATIMA RUIZ, a/k/a Fatima Cabana,** was a victim of identity theft |
| 18 | July 8, 2013 | Letter to TransUnion representing that **FATIMA RUIZ, a/k/a Fatima Cabana,** was a victim of identity theft |

In violation of Title 18, United States Code, Sections 1341 and 2.

## CRIMINAL FORFEITURE ALLEGATION

1.      The allegations in this Second Superseding Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **RAFAEL DURAN** and **FATIMA RUIZ, a/k/a Fatima Cabana,** have an interest.

2.      Upon conviction of any offense alleged in this Second Superseding Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), all property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

3.      If the property described above, as being subject to forfeiture, as a result of any act or omission of the defendant,

-16-

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

All pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), and the procedures of Title 21, United States Code, Section 853.

A TRUE BILL

_____
FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
MICHAEL S. DAVIS
ASSISTANT UNITED STATES ATTORNEY

-17-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. __15-20197-Cr-Martinez/Goodman(s)(s)__ |
| vs. | |
| RAFAEL DURAN, et al. | CERTIFICATE OF TRIAL ATTORNEY* |
| **Defendants.** | |
| _____/ | **Superseding Case Information:** |

**Court Division**: (Select One)

| | | New Defendant(s) | Yes _____ No __x__ |
|---|---|---|---|
| __X__ Miami | ___ Key West | Number of New Defendants | -0- |
| ___ FTL | ___ WPB ___ FTP | Total number of new counts | -0- |

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:      (Yes or No)      __No__
     List language and/or dialect    _____

4.   This case will take      __7-10__    days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

(Check only one)

| | | | | (Check only one) | |
|---|---|---|---|---|---|
| I | 0 to 5 days | | | Petty | _____ |
| II | 6 to 10 days | __x__ | | Minor | _____ |
| III | 11 to 20 days | | | Misdem. | _____ |
| IV | 21 to 60 days | _____ | | Felony | __X__ |
| V | 61 days and over | _____ | | | |

6.   Has this case been previously filed in this District Court?   (Yes or No)   __No__
     If yes:
     Judge:                                    Case No.
     (Attach copy of dispositive order)
     Has a complaint been filed in this matter?   (Yes or No)   __No__
     If yes:
     Magistrate Case No.
     Related Miscellaneous numbers:   _____
     Defendant(s) in federal custody as of   _____
     Defendant(s) in state custody as of   _____
     Rule 20 from the                       District of   _____

     Is this a potential death penalty case? (Yes or No)   __No__

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____Yes __X__ No

8.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? _____Yes __X__ No

_____

MICHAEL S. DAVIS
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 972274

*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: Fatima Ruiz, a/k/a "Fatima Cabana"

**Case No**:   15-20197-Cr-Martinez/Goodman(s)(s)

## Count 1

Conspiracy to commit wire fraud

18 U.S.C. §1349

**Max. Penalty:** Twenty years imprisonment; three years supervised release; $250,000 fine

## Count 10

Wire fraud

18 U.S.C. §§1343, 1346, and 2

**Max. Penalty:** Twenty years imprisonment; three years supervised release; $250,000 fine

## Count 11

Conspiracy to commit mail fraud

18 U.S.C. §1349

**Max. Penalty:** Twenty years imprisonment; three years supervised release; $250,000 fine

## Counts 12 - 14

Mail fraud

18 U.S.C. §§1341, 1346, and 2

**Max. Penalty (per count):** Twenty years imprisonment; three years supervised release; $250,000 fine

**Counts 15 - 18**

Mail fraud

18 U.S.C. §§1341 and 2

**Max. Penalty (per count):** Twenty years imprisonment; three years supervised release; $250,000 fine

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**: Rafael Duran

**Case No**:  15-20197-Cr-Martinez/Goodman(s)(s)

## Count 1

Conspiracy to commit wire fraud

18 U.S.C. §1349

**Max. Penalty:** Twenty years imprisonment; three years supervised release; $250,000 fine

## Counts 2 through 10

Wire fraud

18 U.S.C. §§1343, 1346, and 2

**Max. Penalty (per count):** Twenty years imprisonment; three years supervised release; $250,000 fine