UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20197-Cr-Martinez/Goodman(s)(s)

UNITED STATES OF AMERICA

v.

FATIMA RUIZ,
a/k/a Fatima Cabana,
          Defendant.
_____/

## GOVERNMENT'S FACTUAL BASIS IN SUPPORT
## OF ENTRY OF GUILTY PLEA

Pursuant to Rule 11(b)(3) of the Federal Rules of Criminal Procedure, the United States submits the following factual basis in support of the entry of a guilty plea by defendant Fatima Ruiz, a/k/a Fatima Cabana to Count 11 of the second superseding indictment in this case. Count 11 charges the defendant with conspiring to violate Title 18, United States Code, Sections 1341 and 1346, by agreeing to execute a scheme through the United States mail: (a) to defraud and deprive another of the intangible right of honest services and (b) to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises; all in violation of Title 18, United States Code, Section 1349.

Because the factual basis set forth below serves the limited purpose of supporting the defendant's guilty plea in this case, it is merely a summary and does not purport to represent all facts and circumstances relating to defendant's participation in this offense. Because of its

Exhibit #1

limited purpose, this factual basis similarly does not necessarily purport to identify all other individuals involved in the criminal activity, or all aspects of their participation in the criminal activity.

Through her signature on the last page of this document, the defendant confirms that she has read the factual basis or has had it read to her in his native language. The defendant similarly confirms that she has discussed the factual basis with counsel and that the factual basis is true and correct to the best of the defendant's knowledge.

1. Equifax, TransUnion, and Experian were the major credit reporting agencies which collected and maintained data relevant to an individual's credit worthiness. Equifax, TransUnion, and Experian (hereinafter identified collectively as "the credit reporting agencies") would use such data in order to generate numerical credit scores for individuals that attempted to measure their credit worthiness. The information which these credit reporting agencies would take into account in computing an individual's credit score generally would include the individual's bill paying and borrowing and repayment history. According to the scoring system used by these credit reporting agencies, individuals with higher credit scores generally were deemed to be more favorable credit risks than individuals with lower credit scores.

2. Businesses, credit card companies, and financial institutions frequently would rely on the credit scores generated by the credit reporting agencies in determining whether to extend credit to a prospective borrower and, if so, the terms under which credit would be extended.

3. From approximately October 2010 until approximately December 2012, the defendant operated a credit repair business. The defendant's business sought to assist individuals with low credit scores to improve or repair their credit scores, with the goal of improving their abilities to obtain credit from businesses, credit card companies, and financial institutions and/or the terms under which they could obtain credit. As part of this business, the defendant would communicate with the credit reporting agencies for the purpose of removing from the customers' credit histories incidents that adversely affected their credit scores.

4. One of the methods used by the defendant to repair customer credit was to send letters to the credit reporting agencies that disputed negative items on the customers' credit histories by representing that the negative items listed on the letter had resulted from the customers having been victims of identity theft. To support the claim of identity theft, the defendant would attach to the letters a police report which represented that the customer at issue had made a report of identity theft to a local police officer.

5. Notwithstanding the representations in the police reports, the customers/"victims" identified in the police reports had not made such a report to a police officer. Instead, to obtain the police reports, the defendant deployed an individual named Mitchell Page. Although Page was not a police officer, Page was an associate of George Price, who was a police officer with the Miami-Dade Police Department and who also was a longtime acquaintance of Page.

6.  The defendant would provide Page with the relevant customer's identifying information, as well as the negative accounts to be included in the police report. Page, in turn, would provide the information to Price, who would produce the requested police reports, which Page then would deliver to the defendant.

7.  After receiving from Page the police reports written by Price, the defendant would attach the police reports to the letters she would send to the credit reporting agencies in which she would dispute negative items on her customers' credit histories by claiming that they had been victims of identity theft. The defendant would send the letters and corresponding police reports to the credit report agencies, via United States mail. As part of her guilty plea in this case, the defendant admits to knowing that at least 60% the customers for whom she had obtained these police reports in fact had not been victims of identity theft and that the problems in the customers' credit histories had not been caused by identity theft.

8.  Over the course of the conspiracy charged in Count 11, Page delivered to the defendant approximately 25-30 police reports written by Price. As part of her guilty plea in this matter, the defendant admits to paying Page approximately $100 for many of these reports, with Page providing the other reports at no charge in return for the defendant repairing the credit of Page's associates or clients. Page paid Price for the police reports that Price produced for him. As part of this guilty plea, the defendant also admits to knowing that Page paid Price for the police reports.

9.  As an officer with the Miami-Dade Police Department, George Price owed members of the public the right to his honest services. As such, Price was obligated to act

in the public's best interests. The arrangement through which the defendant paid Mitchell Page for the police reports, who in turn paid George Price, defrauded members of the public of their right to Price's honest services.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 5/10/16    By: *[signature]*
MICHAEL S. DAVIS
ASSISTANT UNITED STATES ATTORNEY

Date: 5/10/16.    By: *[signature]*
DAVID BRAUN, ESQ.
ATTORNEY FOR DEFENDANT

Date: 5/10/16    By: *[signature]*
FATIMA RUIZ, a/k/a Fatima Cabana,
DEFENDANT